**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RUSTAN L. TURNER,

Plaintiff,

v. CIV. NO. 13-404-GBW

CAROLYN W. COLVIN,
*Acting Commissioner of the Social Security Administration*,

Defendant.

**ORDER DENYING MOTION TO REVERSE OR REMAND**

This matter comes before the Court on Plaintiff's Motion to Remand to Agency for Rehearing, with Supporting Memorandum (*doc. 20*), and Defendant Social Security Administration's response (*doc. 22*). Having reviewed these filings, the record, and the law, the Court will DENY Plaintiff's motion and DISMISS this action.

## I. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence," and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an application for supplemental security income under Title XVI on November 3, 2009. AR at 11. Plaintiff alleged that he was entitled to benefits based on a disability onset date of November 1, 2008. *Id.* His claim was initially denied on April 1, 2009, and again denied after reconsideration on March 4, 2011. *Id.* Upon Plaintiff's request, a video hearing was held on October 21, 2011, in front of Administrative Law Judge (ALJ) Michelle K. Lindsay. *Id.* A vocational expert, Mary Diane Weber, also attended the hearing. *Id.*

The ALJ subsequently issued an opinion finding that Plaintiff was not entitled to benefits. AR at 20. In making this determination, the ALJ applied the sequential five-step analysis as required by Social Security Administration (SSA) regulations. 20 C.F.R. § 416.920. The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR at 1. Plaintiff now moves for this Court to remand the ALJ's decision.

### B. Plaintiff's Medical History

Plaintiff, who was 35 years old at the time of his alleged disability onset date, sought benefits based on the following impairments: "diabetes, headaches, vision problems, lower back and feet problems, HBP, memory loss, depression and anxiety." Administrative Record (AR) at 71. The ALJ found that Plaintiff suffered from the following "severe" impairments: spinal degenerative disc disease and arthritis, diabetes mellitus with retinopathy, headaches, substance-induced mood disorder, alcohol abuse,

pain disorder, and dependent personality disorder. AR at 13. Plaintiff does not raise any arguments as to these findings. *See doc. 20*. Instead, he asserts that the ALJ erred in analyzing Plaintiff's mental impairments. *See id.* The Court's written review of the medical records will therefore focus on those impairments.

At the center of Plaintiff's arguments is a Mental Status Examination conducted by a consultative psychological examiner, Carl B. Adams, PhD, on January 26, 2011. *See id.*; AR at 281-85. In making his assessment, Dr. Adams appears to have used the multiaxial assessment system outlined in the Diagnostic and Statistical Manual of Mental Disorders (DSM IV). *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM IV) 27 (4th ed. 2000); AR at 283 (Listing Axes I – V in the "Diagnosis" section of his Mental Status Examination). Dr. Adams diagnosed Plaintiff with the following non-personality disorders: (1) substance-induced mood disorder; (2) alcohol abuse and dependence disorder – current; (3) methamphetamine abuse and dependence disorder – reportedly in remission; and (4) an unspecified pain disorder. AR at 283. Dr. Adams diagnosed Plaintiff as having a "dependent personality disorder." *Id.* He further diagnosed Plaintiff's diabetes as a medical condition that may be relevant to Plaintiff's psychiatric problems. *Id.* Dr. Adams also diagnosed Plaintiff's moderate-to-severe substance use as a psychosocial stressor affecting Plaintiff's diagnosis and treatment. *Id.* Finally, Dr. Adams assessed Plaintiff as having a Global Assessment of Functioning (GAF) score of 55 (AR at 283), which meant he suffered from "[m]oderate symptoms . . . OR moderate difficulty in one of the following: social, occupational, or school

functioning." DSM IV at 34.

Dr. Adams made additional findings that Plaintiff had the following "Functional Abilities":

- No limitations in "being aware of normal hazards."
- No limitations with regard to "short and simple instructions."
- Mild limitations with regard to "detailed instructions."
- Moderate limitations in "adapting to changes."
- Moderate-to-severe limitations with regard to "concentration and task persistence."
- Moderate-to-severe limitations in "interacting with coworkers and supervisors."

AR at 283.

### C. The ALJ's Decision

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 416.920. If the Commissioner is able to determine whether an individual is disabled at one step, he does not go on to the next step. *Id*. § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and that either (3) his impairment(s) meet or equal one of the "Listings" of presumptively disabling impairments, or (4) he is unable to perform his "past relevant work."416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations." *Id*. § 416.945(a)(1). Second, the ALJ determines the physical and mental demands of claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)). Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257

Here, at steps one, two, and three, respectively, the ALJ found that Plaintiff had not engaged in substantially gainful activity since his application date, that his physical

and mental impairments were severe, but that these impairments did not meet or equal the severity of a listed impairment. AR at 13-14. At the fourth step, the ALJ found, among other limitations, that Plaintiff's RFC made him capable of performing "less than the full range of light work," 20 C.F.R. § 416.967(b), but incapable of performing "past relevant work," 20 C.F.R. § 416.960(b). AR at 15, 19. At the fifth and final step, based on Plaintiff's RFC, age, education, and work experience, and testimony by a vocational expert (VE), the ALJ concluded that Plaintiff was capable of performing jobs that were available in significant numbers in the national economy. AR at 19. Having found Plaintiff not disabled at the fifth step, the ALJ denied his application for benefits. AR at 20.

## III. ANALYSIS

Plaintiff challenges the ALJ's determination of his RFC, which is determined at the fourth step of the analysis, but also considered at the fifth step. Plaintiff's sole argument is that the ALJ did not incorporate Dr. Adams's opinions regarding Plaintiff's mental impairments into the RFC assessment, and failed to explain her reasons for this omission. *Doc. 20* at 8-9 ("Nowhere in her decision did the ALJ explain whether or why she did not adopt Dr. Adams's assessment of moderate to severe limitations with concentration and task persistence . . . [or] Dr. Adams's assessment of moderate to severe limitations in interacting with coworkers and supervisors.").

The Commissioner responds that "[t]he ALJ properly considered Dr. Adams [sic] consultative report and opinion and accommodated it in the RFC finding and

hypothetical question." *Doc. 21* at 8. Regarding the ALJ's analysis of Dr. Adams's opinions, the Commissioner asserts that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's functional capacity, the need for express analysis is weakened." *Doc. 21* at 9 (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). Moreover, the Commissioner avers, "the ALJ [] indicated that she considered the opinion evidence and all of Plaintiff's subjective symptoms in accordance with the regulations." *Doc. 20* at 10 (citations omitted).

The Court has reviewed the administrative record, the briefing, and the relevant law. Having done so, the Court concludes that the ALJ's failure to explicitly weigh Dr. Adams's medical opinions was harmless error because the RFC is not inconsistent with those opinions.

**A. The ALJ's analysis of Dr. Adam's opinion evidence does not comport with the applicable legal standards.**

Under SSA regulations, the agency must evaluate every medical opinion it receives, which includes Dr. Adams's opinions about Plaintiff's mental impairments. 20 C.F.R. § 416.927(c). The ALJ was to consider six factors in deciding the weight to be given to Dr. Adams's medical opinions. *See* 20 C.F.R. § 416.927(c)(2)-(6).[1] The ALJ need not explicitly consider and apply each and every factor to each opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citations omitted). The ALJ must, however, "make clear

[1] The six factors are (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which a medical source provides supporting explanations for the opinion; (4) the degree to which the opinion is consistent with the record as a whole; (5) whether the medical source is a specialist in area related to the opinion; and (6) any other factors that tend to contradict or support an opinion. 20 C.F.R. § 416.927(c)(2)-(6)

how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003)).

Although *Oldham* and *Krauser* addressed non-controlling treating physicians' opinions, the above requirements apply with equal force to opinions by consultative examiners such as Dr. Adams. 20 C.F.R. § 416.927(e)(2)(ii) (ALJ must consider medical source findings using the six factors and "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the SSA]"); *see also Mounts v. Astrue*, 479 F. App'x 860, 867 (10th Cir. 2012) (unpublished) (applying factors in 20 C.F.R. § 404.1527, which mirrors 20 C.F.R. § 416.927, to consultative psychologist's opinion).

Here, the ALJ simply recounted and did not otherwise discuss Dr. Adams's opinions. AR at 17-19. The ALJ did not indicate what weight he gave the opinions let alone "give good reasons, tied to the factors" in the SSA regulations for assigning weight. *Krauser*, 638 F.3d at 1330. His failure to do so amounts to error. *Id.* (finding error where "the ALJ failed to articulate the weight, if any, he gave [a medical] opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion

altogether. . .because [the court] cannot meaningfully review the ALJ's determination"") (quoting *Watkins*, 350 F.3d at 1301).

This conclusion, however, does not end the matter. Rather, the question becomes whether the ALJ's error was harmless.

**B. Because the RFC adequately accounts for Dr. Adams's medical opinions, the ALJ's failure to explicitly weigh those opinions was harmless error.**

"[T]he harmless-error doctrine applies in social security cases 'where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in another way.'" *Anderson v. Colvin*, 514 F. App'x 756, 758 (10th Cir. 2013) (unpublished) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)). Regarding RFC determinations, the Tenth Circuit has held that harmless error applies where an ALJ's RFC "is not inconsistent" with a medical opinion, despite a failure to expressly weigh the opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 (10th Cir. 2012). In *Keyes-Zachary*, the court held that an ALJ's failure to expressly weigh five different medical opinions each amounted to harmless error. *Id.* at 1161-65. The Court explained that where there is no inconsistency, "[t]here is no reason to believe that a further analysis or weighing of [an] opinion could advance [the plaintiff's] claim of disability." *Id.* at 1163.

Here, the limitations assessed by Dr. Adams for which Plaintiff alleges error and the pertinent portions of the RFC are as follows:

| Dr. Adams's opinions | ALJ's RFC |
|---|---|
| • Moderate-to-severe limitations with regard to "concentration and task persistence." | • He is limited to understanding, remembering, and carrying out only short, simple instructions, not detailed or complex instructions.<br>• He is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task. |
| • Moderate-to-severe limitations in "interacting with coworkers and supervisors." | • He requires work generally involving things as opposed to people.<br>• He can adequately interact with co-workers and supervisors[2] on at least a superficial level sufficient for unskilled work. |

AR at 15. Here, as in *Keyes-Zachary*, the ALJ's RFC determination is not inconsistent with Dr. Adams's medical opinions so further analysis or weighing of Dr. Adams's opinions would not advance Plaintiff's disability claim. Accordingly, the Court will deny Plaintiff's request for remand.

1. ***The RFC is not inconsistent with Dr. Adams's first opinion.***

To begin, the ALJ's recognition that Plaintiff needed to be limited to simple instructions and simple tasks lasting no more than two hours at a time is not inconsistent with Dr. Adams's opinion that Plaintiff has moderate-to-severe limitations regarding concentration and task persistence. In *Keyes-Zachary*, the court held that a psychologist's

[2] Although the RFC laid out in the ALJ's written opinion did not explicitly incorporate Plaintiff's ability to interact with *supervisors*, this appears to have been a typographical error. The ALJ provided the VE a hypothetical that included supervisors. AR at 51 ("[Plaintiff] would be able to adequately interact with coworkers . . . [a]nd supervisors on at least a superficial level[, s]ufficient for unskilled work."). The VE testimony is what the ALJ's ultimate decision was based on. Therefore, the ALJ's failure to include "supervisors" in his written RFC was harmless. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Conversely, had the ALJ presented an RFC to the VE that omitted supervisors notwithstanding its inclusion in the written opinion, the resulting error might not have been harmless.

opinion that the plaintiff "can remember, comprehend and carry out (simple) (complex) instructions on an independent basis" was not inconsistent with an RFC finding that "the claimant is able to perform simple, repetitive and routine tasks . . . ." *Id.* at 1161 (internal citations and quotations omitted). Because the ALJ's RFC in this case is sufficiently similar to Dr. Adams's first limitation, the ALJ's failure to expressly weigh this opinion was harmless error.

***2. The RFC is not inconsistent with Dr. Adams's second opinion.***

Whether the ALJ's RFC is not inconsistent with Dr. Adams's second opinion that Plaintiff had moderate-to-severe limitations in interacting with coworkers and supervisors is a closer question. The ALJ's RFC included two relevant limitations – (i) that Plaintiff's work generally involve "things as opposed to people," and (ii) that it involve "interacting with coworkers and supervisors only on a superficial level." The challenge in comparing Dr. Adams's second opinion with the related RFC limitations is that they are coming at the same problem from opposite sides. Dr. Adams's opinion focuses on the nature of Plaintiff's problems interacting with people. The RFC language focuses on the interactions Plaintiff can accomplish despite his problems. Nonetheless, the Court is persuaded that work generally involving things and not people where the employee interacts with coworkers and supervisors only on a superficial level is sufficiently consistent with a person with moderate-to-severe limitations in interacting with coworkers and supervisors.

Importantly, the RFC included limitations on both the frequency and degree of Plaintiff's interaction with others. Regarding frequency, as explained by the VE, the RFC limitations meant that "in most cases, there is a supervisor either in the immediate area, or a supervisor who is available and comes around, usually, a couple of times . . . during one's shift." AR at 54. More broadly, the ALJ also concluded in the RFC that Plaintiff must work "generally [with] things as opposed to people." AR at 51. In short, the RFC limitations dictated infrequent interaction with supervisors and coworkers. Regarding degree, the RFC limitation explained that the only interactions Plaintiff could handle were at a "superficial level." Thus, regardless of their frequency, the interactions with coworkers or supervisors would not be significant or taxing events. Put together, the RFC limitation meant that the ALJ concluded that Plaintiff could have only infrequent and superficial interactions with others. This limitation is consistent with Dr. Adams's psychological assessment of a moderate to severe limitation in interacting with coworkers and supervisors.[3]

The ALJ's conclusion that this opinion from Dr. Adams did not completely foreclose Plaintiff's ability to work is consistent with Dr. Adams's related opinion that Plaintiff retained a Global Assessment of Functioning (GAF) score of 55. AR at 283. Per the DSM IV, a GAF score between 51 and 60 means an individual has only "[m]oderate

---

[3] The Court is not dissuaded from this conclusion based on the somewhat confusing testimony from the VE on cross-examination. It seems that Plaintiff's counsel asked the VE to assume that "occasional" under the Dictionary of Occupational Titles was the inverse of a moderate-to-severe problem. *See* AR 55-56. While it is not clear to the Court, the VE may have concluded, based on that assumption, that Plaintiff could not find work in the economy. *Id*. Even accepting that the VE was expressing such an opinion, it is based on the unsupported assumption accepted by the witness at the behest of counsel. As such, it does not alter the Court's analysis.

symptoms . . . OR moderate difficulty in social, occupational, or school difficulty (e.g., few friends, conflicts with peers or coworkers)." DSM IV at 35. Dr. Adams's placement of Plaintiff in this band is significant because the next band down -- a GAF score between 41 and 50 -- would have meant Plaintiff suffered from "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* Apparently, Dr. Adams did not conclude that Plaintiff was "unable to keep a job" despite his moderate-to-severe interaction problems.

On this record, the Court finds that neither of the opinions expressed by Dr. Adams was inconsistent with the RFC. Thus, the ALJ's failure to properly weigh or discuss those opinions was harmless.

## IV. CONCLUSION

Plaintiff has not demonstrated that the ALJ committed reversible error in his analysis of Dr. Adams's medical opinions. Therefore, Plaintiff's Motion to Remand to Agency for Rehearing, with Supporting Memorandum (*doc. 20*) is DENIED, and this action is DISMISSED.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**